IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:08-CV-134-H(3)

SILVIA RUBIO GAXIOLA and all          )
others similarly situated,            )
                                      )
        Plaintiffs,                   )
                                      )
    v.                                )
                                      )          **ORDER**
WILLIAMS SEAFOOD OF ARAPAHOE,         )
INC. and SHERRE L. MIDYETTE,          )
                                      )
        Defendants.                   )
                                      )

This matter is before the court on plaintiffs' motion for partial summary judgment, defendants' motion for partial summary judgment, and plaintiff Silvia Rubio Gaxiola's ("Gaxiola") motion for class certification of the claims brought pursuant to the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 et seq. Appropriate responses and replies have been filed, and the time for further filings has expired. These matters are ripe for adjudication.

## BACKGROUND

This is an action alleging claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 et seq. ("NCWHA"). Gaxiola

is a former employee of defendants who was recruited in Mexico to work as a crab picker at defendants' seafood processing facility in Arapahoe, North Carolina. Gaxiola alleges that she and other individuals employed by defendants on H-2B guestworker visas from 2005 through 2008 were not paid minimum wage for all hours worked in violation of the FLSA. Specifically, Gaxiola alleges: (1) that she and other employees were paid on a piece-rate basis (by weight of crab picked) even when the weekly pay earned through a piece rate was less than the minimum wage mandated by federal law; and (2) that defendants reduced her wages and the wages of her coworkers below minimum wage by deducting from their paychecks costs incurred for the benefit of defendants, such as visa, transportation and border crossing expenses. Additionally, Gaxiola brings a claim pursuant to NCWHA alleging defendants failed to pay plaintiff and members of the proposed NCWHA class at least the promised wage each week in which they performed work for defendants. Gaxiola alleges that defendants also violated NCWHA by making unauthorized deductions from her pay and the pay of the proposed plaintiff class members for transportation, visa and border crossing expenses.

This court granted Gaxiola's motion for conditional class certification of the FLSA claims on June 17, 2009. All discovery has been completed in this matter. Plaintiff now also seeks

2

certification of a class under Rule 23 of the Federal Rules of Civil Procedure.

## STATEMENT OF THE FACTS

Plaintiff class members were employed by defendants pursuant to the H-2B visa program, which allows the temporary employment of foreign workers.[1] See 8 U.S.C. § 1184(c); 8 C.F.R. §214.2(h). The terms of the H-2B visa program are controlled by statute, 8 U.S.C. § 1101(a)(15)(H)(ii)(b), as well as by United States Department of Labor ("USDOL") regulations applicable to the temporary labor certification process, 20 C.F.R. § 655.0 et seq. and 8 C.F.R. § 214.2. On December 19, 2008, USDOL published new regulations governing the H-2B program.[2] See Labor Certification Process and Employment for H-2B and Other Technical Changes, 73 Fed. Reg. 78020 (Dec. 19, 2008). Both the previous and the new H-2B regulations

---

[1]Defendants continually point out to the court in their briefs that Gaxiola was employed by the defendants for only one month. While this fact may be true, the length of employment is irrelevant to whether defendants are required to follow the Fair Labor Standards Act. The amount of damages may well be affected by the length of Gaxiola's employment, but the determination of whether there have been violations of the FLSA are unaffected by the length of her employment or the reasons for her departure from the defendants' employ.

[2]Prior to the amendments, the H-2B regulations were located in 20 C.F.R. § 655 subpart C; now they are located in § 655 subpart A. The amended regulations make procedural and substantive changes to the H-2B program. Because defendants did not employ H-2B workers in 2008 or 2009, the old regulations are controlling in the instant case.

3

require the Secretary of Labor to make two overarching determinations before allowing an employer to employ H-2B workers:

> (i) Whether U.S. workers are available to perform temporary employment in the United States, for which an employer desires to employ nonimmigrant foreign workers, and
>
> (ii) whether the employment of aliens for such temporary work will adversely affect the wages or working conditions of similarly employed U.S. workers.

20 C.F.R. § 655.0(a)(1) (2007) (now 20 C.F.R. § 655.32(b)). Employers must pay H-2B workers the highest of the following rates: the prevailing wage as determined by the USDOL, federal minimum wage, the applicable state minimum wage, or the applicable local minimum wage. The prevailing wage is the wage necessary to protect against adversely affecting U.S. workers.

In 2005, 2006 and 2007 defendants sought permission to import foreign labor to work as crab pickers in their seafood processing plant by filing temporary labor certification applications ("Clearance Orders") with USDOL. (See Answer ¶15 [DE #13].) The Clearance Orders were prepared, signed and submitted by defendant Midyette. (Clearance Orders [DE #39-6, #39-7, #39-8].) On each Clearance Order, defendants indicated the number of workers needed, the period of employment, the type of work, and the terms and conditions of work being offered by defendants. (Id.) The Clearance

4

Orders indicated that the H-2B workers would work 35 hours per week plus varying overtime; that the regular work schedule would be 7:00am until 4:00 pm; that job duties would include hand picking meat from the bodies and claws of crabs and placing the meat in a cup; and that the basic rate of pay based on the prevailing wage would be $5.17 per hour in 2005 and 2006, and $6.17 per hour in 2007. (Id.) USDOL approved the terms of the work in the Clearance Orders and certified defendants to employ foreign workers through the H-2B visa program. (Answer ¶ 19.)

Once an employer receives temporary labor certification from USDOL, the employer may then petition United States Customs and Immigration Services for the actual visas. Each individual who is going to work pursuant to the certification must go to the United States Consulate in his home country to apply for and receive his visa. H-2B visas issued to workers are valid only for the specific job described in the employer's Clearance Order. 20 C.F.R. § 655.34(b). Upon completion of the work period described in the Clearance Order or upon separation from work, the worker is required to return to his home country. 20 C.F.R. § 655.35(a).

During the time period relevant to the instant matter, defendants relied on returning workers and word of mouth to fill job openings each year. Two of defendants' H-2B employees, Alba Gloria

5

Acosta and Amado Segura, along with their daughter, acted on behalf of defendants while in Mexico by communicating with new and returning workers and making arrangements for those workers. (Midyette Dep. at 20.[3]) Defendant Midyette made visa interview appointments for the workers and then notified them of their appointments. (Midyette Dep. at 24.) Acosta and Segura made arrangements for the workers to travel together to their visa interviews as well as from their homes in Mexico to Arizona. (Midyette Dep. at 19, 23; Gaxiola Decl. ¶2.)

Defendants loaned money to Gaxiola as well as some other H-2B workers to cover some of their travel costs and visa expenses. (Midyette Dep. at 57, 58; Gaxiola Decl. ¶ 2.) Additionally, defendants purchased airline tickets for the named plaintiff and all of the other H-2B workers to fly from Arizona to North Carolina. (Midyette Dep. at 9.)

Defendants recovered the cost of the flights and the money advanced to workers to cover the other H-2B related expenses primarily through payroll deductions. (Midyette Dep. at 58, 62; Gaxiola Decl. ¶ 4.) Defendants never received written authorization to make those deductions. (Answer ¶¶ 37 and 43.)

---

[3] Ms. Midyette's deposition is filed on the docket in two parts, with Pages 1-53 being filed at DE #39-8 and pages 54-106 filed at DE #39-18.

Defendants did not advance money to all their employees to cover these expenses; some of the workers paid all of these costs except for their airline tickets. (Midyette Dep. at 61.) These workers were not reimbursed for the visa, border crossing or transportation expenses that they paid themselves. (See DE #39-12.)

## COURT'S DISCUSSION

### I.    Summary Judgment

#### A.    Standard of Review

Summary judgment is appropriate pursuant to Fed. R. Civ. P. 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. Faircloth v. United

7

<u>States</u>, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. <u>Anderson</u>, 477 U.S. at 249.

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. <u>Anderson</u>, 477 U.S. at 247-48. Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. <u>Faircloth</u>, 837 F. Supp. at 125.

## B. Parties' Contentions

Plaintiffs seek an order granting summary judgment as to liability, contending that:

(1) Defendants willfully violated the minimum wage provisions of FLSA by failing to pay Gaxiola and the FLSA class members the minimum wage established in 29 U.S.C. § 206(a)(1) when compensation on a piece-rate basis resulted in pay less than the minimum wage. Defendants also willfully violated the minimum wage provisions of the FLSA by

8

shifting the transportation, visa, and border crossing expenses, costs which were incurred for the benefit of defendants, to Gaxiola and the other members of the FLSA class when those costs brought their pay below minimum wage.

(2) Defendants violated the wage provisions of the NCWHA by failing to pay Gaxiola and the proposed NCWHA class members all of their wages when those wages were due under an express, constructive or implied agreement to pay those wages at those rates for all work performed for the defendants. Defendants also violated the NCWHA by deducting from the weekly wages due Gaxiola and the proposed NCWHA class members transportation, visa and border crossing expenses incurred for the benefit of defendants.

Defendants move for summary judgment as to the following claims: (1) willful violations of the FLSA; (2) liquidated damages under the FLSA or NCWHA (asserting "good faith" defense); (3) all claims under the NCWHA to the extent that Gaxiola has not sought certification of a class of plaintiffs who share those claims or who could potentially opt out of such a class; and (4) any claims seeking

reimbursement of passport fees, visa fees, or any transportation costs.

## II.  **FLSA Claims**

### A.  **Coverage by the FLSA**

The FLSA is a remedial statute designed to "eliminate . . . substandard labor conditions" in the United States.  Powell v. U.S. Cartridge Co., 339 U.S. 497, 510 (1950).  It was enacted to protect workers who lack sufficient bargaining power to secure a subsistence wage.  See Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981); Brooklyn Sav. Bank v. O'Neal, 324 U.S. 697, 707 (1945).  Under the FLSA, an employer is required to pay each employee wages at or above the minimum wage rate for the hours worked during each workweek.  See 29 U.S.C. § 206.  The FLSA applies to all employees for whom there is not a specific exemption.  29 U.S.C. § 203(e); See Powell v. U.S. Cartridge Co., 339 U.S. 497 (1950); Patel v. Quality Inn South, 846 F.2d 700 (11th Cir. 1988).  H-2B workers are not specifically exempt; therefore, they are protected by the provisions of the FLSA.

**B.   Failure to Pay Minimum Wage when Piece-Rate
Compensation was Less than Minimum Wage**

Employers must pay minimum wage for all hours worked.   29 U.S.C.
§ 206(a); 29 U.S.C. § 203(g).   Thus, workers paid on a piece-rate
basis are entitled to the minimum wage rate when the piece-rate
compensation does not reach the minimum wage.   29 C.F.R. § 776.5
("[W]hatever the basis on which the workers are paid, whether it be
monthly, weekly, or on a piecework basis, they must receive at least
the equivalent of the minimum hourly rate.").

Plaintiffs seek summary judgment as to defendants' liability
on their claim that workers paid on a piece-rate basis did not receive
minimum wage for all hours worked as required by the FLSA.   The court
agrees that summary judgment is appropriate because there are no
contested issues of fact with regard to defendants' liability for
failing to pay their employees compensated on a piece-rate basis at
least minimum wage during some periods.

Defendants had a production standard in place during the 2005,
2006 and 2007 seasons in which crab pickers were required to pick
3.5 pounds of crab per hour.   No one was ever fired for failing to
meet the production standard.   Yet the evidence shows there were
times that defendants paid employees by the pound, even if that pay
did not rise to the level of minimum wage.   For example, Gaxiola's
pay stub from July 11, 2007, shows that she worked 34.4 hours and

11

received gross pay of $164.35. There is a handwritten notation of 86 1/2 on the pay stub, which purportedly is the number of pounds of crab picked by Gaxiola that week. Multiplying that number by the agreed-upon piece-rate of $1.90 per pound equals the $164.35 gross pay received by Gaxiola that week. However, $164.35 for 34.4 hours of work is only $4.78 per hour.[4]

When questioned about defendants' practices, Ms. Midyette admitted that defendants did not always comply with the FLSA's minimum wage requirement. Ms. Midyette stated: "If you're—if you're trying to get me to say that once in awhile they weren't paid their full thing, yes." (Midyette Dep. at 87.) "If you're—If I - are there incidents where they may not have made production, and got paid by production instead of hours." (Midyette Dep. at 87 (indicating affirmatively).).

Based on the pay stubs presented to the court as well as Midyette's own deposition testimony, the court finds that defendants violated the FLSA at times by failing to pay workers minimum wage when their piece-rate compensation was less than minimum wage. The court therefore grants plaintiffs' motion for summary judgment as

---

[4] From 2005 through July 23, 2007, the federal minimum wage was $5.15 per hour; on July 24, 2007, it increased to $5.85 per hour. 29 U.S.C. § 206.

to defendants' liability on this issue. The court makes no findings as to plaintiffs' damages at this time.

## C. Deductions for Visa, Transportation and Border Crossing Fees

Compliance with the FLSA's minimum wage requirements also means that employees are entitled to minimum wage for the number of hours worked during the workweek "free and clear" of improper deductions. 29 C.F.R. §§ 531.35, 776.4. The FLSA defines "wage" to include both cash wages and the reasonable cost of providing "board, lodging, or other facilities;" thus, an employer may count these costs toward satisfying its minimum wage obligations. 29 U.S.C. § 203(m); De Luna-Guerrero v. N.C. Grower's Ass'n, 338 F. Supp. 2d 649, 656 (E.D.N.C. 2004). An employer may not deduct from employee wages the cost of facilities which primarily benefit the employer if such deductions drive wages below the minimum wage.

Additionally, failing to reimburse plaintiffs for their expenditures is equivalent to the employer paying for these expenses and then improperly deducting them from the employees' pay for the first workweek. Id. Known as a de facto deduction, "there is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear." Arriaga v. Florida Pacific Farms, LLC, 305 F.3d 1228, 1236 (2002). The FLSA was implemented to protect workers and

13

to "eliminate . . . substandard labor conditions throughout the nations." <u>Powell v. U.S. Cartridge Co.</u>, 339 U.S. 497, 510 (1950).

In <u>De Luna-Guerrero</u>, this court previously held:

> The employer may count as "wages" under the FLSA the reasonable cost "of furnishing [an] employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m). "Other facilities" have been further defined by the regulations contained in 29 CFR § 531.32(a) to include "transportation furnished employees between their homes and work where the travel time does not constitute hours worked compensable under the Act and the transportation is not an incident of and necessary to the employment." However, the regulations also note "that under § 531.3(d)(1), the cost of furnishing 'facilities' which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." 29 CFR § 531.32(c) (Items held for benefit of employer defined as "transportation charges where such transportation is an incident of and necessary to the employment (as in the case of maintenance-of-way employees of a railroad)").

<u>De Luna-Guerrero</u>, 338 F. Supp. 2d at 656-57.

Therefore, the ultimate question before the court is whether the transportation and visa costs incurred by Gaxiola and the other class members were primarily for the benefit or convenience of the employer and incident of and necessary to the employment. If the costs are determined to have been primarily for the benefit of the employer, the FLSA requires that the plaintiffs be reimbursed for such costs to the extent necessary to ensure that the workers receive

14

minimum wage for each workweek.

### 1. Transportation Costs and Border Crossing Fees

The case law in this district is well settled as to transportation costs and border crossing fees.[5] Transportation charges are an inevitable and inseparable consequence of having foreign nationals employed in the United States pursuant to an H-2B visa. These costs are "an incident of and necessary to the employment" and are "primarily for the benefit of the employer." As such, these costs cannot be the subject of a deduction, either actual or defacto, that reduces a worker's wage below federal minimum wage. De Luna-Guerrero, 338 F. Supp. 2d at 661. Therefore, defendants are liable for any deductions taken from plaintiffs' pay, whether actual or de facto, for transportation expenses "to the extent these deductions drove plaintiffs' first week's wages below the statutory minimum." Garcia v. Frog Island Seafood, Inc., 644 F. Supp. 2d 696, 707 (2009).

### 2. Visa Costs

In De Luna-Guerrero, this court found that visa expenses for H-2A employees are "an incident of and necessary to employment" (not "other facilities") as defined by 20 C.F.R. § 531.32(a)) and

---

[5]The court considers border crossing fees to be a part of a worker's transportation expenses. Garcia v. Frog Island Seafood, Inc., 644 F.Supp.2d 696, 707 (2009).

15

therefore cannot be subject to deduction, either actual or de facto, if such deduction results in a worker receiving less than the minimum wage. Plaintiff asks this court to extend its holding in De Luna-Guerrero to H-2B workers.

The reasons this court found visa expenses to be incident of and necessary to employment of H-2A workers in De Luna Guerrero apply equally to H-2B visas. The type of visa required for H-2B workers has no value outside of the employment and arises directly out of the employment. Additionally, the visa restricts a worker to one employer for one season, and the visas are integral to the program and are required for employment. De Luna-Guerrero, 338 F. Supp. 2d at 662.

However, Frog Island Seafood held that the employer was not liable for reimbursement of passport and visa expenses incurred by the plaintiffs in that action. Central to the court's ruling was a 2009 amendment to the H-2B regulations, effective January 18, 2009, which provides that H-2B employers are "not prohibit[ed] . . . from receiving reimbursement for costs that are the responsibility of the worker, such as government required passport or visa fees." 20 C.F.R. § 655.22(g)(2) (emphasis added). In Frog Island, the court stated that these DOL regulations "speak directly to the issue of passport and visa expenses" and held for the defendants. Defendants

in the instant matter ask the court to follow Frog Island.

Plaintiffs, however, argue that while the regulation does speak directly to the costs associated with visas and passports, the regulation does not change the relationship between those costs and the FLSA. Plaintiffs argue that the correct interpretation of § 655.22(g)(2) is that employers or their agents are not prohibited from seeking reimbursement for the costs of H-2B visas and/or passports from their employees, as long as the reimbursement does not bring the employees' pay below minimum wage. This court agrees.

Title 20 C.F.R. § 655.22 regulates the obligation of employers under the H-2B labor certification program. It does not speak to compliance with the FLSA. The issue before the court today is not whether defendants have complied with the H-2B regulations, but rather whether there was compliance with the minimum wage requirements of the FLSA. Even the amendment to the H-2B regulation itself cautions that "an employer subject to the FLSA may not make deductions which would violate the FLSA." 20 C.F.R. § 655.22(g)(1). Additionally, since the court's decision in Frog Island Seafood, the USDOL has reiterated that under the FLSA, transportation and visa costs associated with the H-2B program are primarily for the benefit of the employer. See USDOL Field Assistance Bulletin No. 2009-2 (DE #39-17) ("[T]his Bulletin clarifies that employers are responsible

17

for paying the transportation and visa expenses of H-2B employees, where shifting these costs to employees would effectively bring their wages below the FLSA minimum wage in their first workweek of employment.")

This court finds no reason to stray from its prior holding in De Luna-Guerrero. Under the FLSA, visa expenses are "incident of and necessary to the employment" and therefore do not qualify as "other facilities" and cannot be the subject of deductions, either actual or de facto, that would reduce an employee's wages below the minimum wage. See 29 U.S.C. § 203(m); 29 C.F.R. § 531.32.

D. **Willfulness**

Defendants move for summary judgment as to plaintiffs' FLSA claims arising prior to August 1, 2006. Defendants contend there is no genuine issue of material fact that any alleged violations were not willful and these claims are therefore barred by the statute of limitations.

The statute of limitations for claims under the FLSA is two years, unless plaintiffs can prove that defendants acted willfully. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988) ("Ordinary violations of the [FLSA] are subject to the two-year limitations period."). If willfulness is shown, then the statute of limitations is increased to three years. Plaintiffs bear the burden of proving

18

that defendants' acts or omissions were "willful" within the meaning of the FLSA.  See id. at 135 (placing burden of proof upon plaintiff Secretary of Labor).  An employer's violation of the FLSA is willful if the employer either "knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the FLSA.  Id. at 133.  Unreasonable or negligent conduct is not enough to constitute "willful" conduct.  Id. at 134.

### 1.  Piece-rate violations

Defendants knew about their obligation to pay the minimum wage to all of their employees.  Defendants additionally knew that when they paid their employees on a piece-rate basis they would be required to pay them additional wages if their piece-rate compensation was not at least equal to minimum wage.  Plaintiff argues that despite knowledge of their obligations under the FLSA, defendants knowingly and intentionally failed to pay plaintiff and members of the FLSA class who were compensated on a piece-rate basis at least minimum wage on several occasions.  This court agrees.  In her deposition, defendant Midyette admits that she understood that she was required to pay at least minimum wage for the hours worked, even if she was in the practice of paying on a piece-rate.  (Midyette Dep. at 88-89 (acknowledging that she understood FLSA obligations).) She also admits that she did not always follow what she knew to be the law.

(Midyette Dep. at 86-88.) ("[I]f you're trying to get me to say that once in awhile they weren't paid their full thing, yes.") Therefore, as to plaintiffs' claim that defendants violated the FLSA by paying a straight piece-rate wage, this court finds those violations to be willful under the FLSA.

### 2. Deduction Violations

Plaintiffs also argue that defendants acted willfully by deducting from their pay, via either actual or de facto deductions, transportation and visa expenses which brought their wages below the required minimum wage. Defendants argue otherwise, asserting that defendant Midyette attended a training session about the H-2B program in 1992 sponsored by the North Carolina Employment Security Commission (not the USDOL). Additionally, they say she did her own research online and by speaking to other crab processors about deduction practices. She did not seek a legal opinion on her practices, but she was never notified by anyone, either worker or government agency, that defendants' practices were unlawful or improper.

This court finds that plaintiffs have not shown evidence sufficient to satisfy their burden of proof on the issue of defendants' willfulness as to the deductions. In making this decision, this court notes the nature of de facto deductions and the fact that the

20

propriety of such deductions has been the subject of ongoing litigation in the federal courts for a number of years. See, e.g., Castellanos-Contreras v. Decatur Hotels, LLC, 622 F.3d 393 (5th Cir. 2010) (holding that employer was not required to reimburse H-2B workers for visa and transportation costs incurred prior to issuance of USDOL Field Assistance Bulletin No. 2009-2). Therefore, the court finds that defendants' "piece-rate violations" were willful, but defendants' deduction violations were not.

### E. Good Faith Defense

The Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251 et seq., includes three employer defenses that may apply even if the employer is found to be in violation of the FLSA: Section 9, which provides a defense based on employer acts or omissions that occurred before the effective date of the Portal-to-Portal Act; Section 10, which provides a bar to liability if the employer can prove good faith as defined therein; and, Section 11, which allows the court, in its discretion, to refuse to award liquidated damages to a prevailing plaintiff under certain circumstances.

Section 10 of the Portal-to-Portal Act, the good-faith defense to the FLSA, provides, in pertinent part, as follows:

> (a) In any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or

21

> overtime compensation under the Fair Labor Standards Act
> of 1938, as amended [29 U.S.C.A. § 201 et seq.] . . . if
> he pleads and proves that the act or omission complained
> of was in good faith in conformity with and in reliance
> on any written administrative regulation, order, ruling,
> approval, or interpretation, of the [USDOL], or any
> administrative practice or enforcement policy of [USDOL]
> with respect to the class of employers to which he
> belonged. Such a defense, if established, shall be a bar
> to the action or proceeding, notwithstanding that after
> such act or omission, such administrative regulation,
> order, ruling, approval, interpretation, practice, or
> enforcement policy is modified or rescinded or is
> determined by judicial authority to be invalid or of no
> legal effect.

29 U.S.C. § 259. To avail itself of this defense, an employer must

prove that it actually relied upon an administrative regulation,

order, ruling, approval, interpretation, enforcement policy or

practice. 29 C.F.R. § 790.16(a). In deciding whether defendants

have proven good faith, the court must look at (1) the particular

"agency action" upon which the defendants relied; (2) whether

defendants can show actual reliance; and, (3) whether defendants

acted in good faith, both objectively and subjectively.

Defendants attempt to make an argument, albeit a weak one, that

they should be entitled to the good faith defense, relying on

basically the same evidence used to argue that their actions were

not willful. Merely participating in the H-2B program for several

years and assuming you were in compliance because the government

never told you otherwise is not sufficient to meet the heavy burden

22

required to take advantage of the good faith defense. Therefore, defendants' motion for summary judgment as to the good faith defense is DENIED.

## III. NCWHA Claims

### A.    Motion to Certify NCWHA Claims

By order dated June 17, 2009, this court conditionally certified plaintiffs' FLSA claims as a collective action under 29 U.S.C. § 216(b). Gaxiola now seeks to certify an additional plaintiff class with claims under the NCWHA, N.C. Gen. Stat. §§ 95-25.6, 95-25.8, 95-25.22 and 95-25.22(a1), pursuant to Rule 23 of the Federal Rules of Civil Procedure. Specifically, Gaxiola seeks to represent a plaintiff class consisting of all individuals who worked for defendants from August 1, 2006 through the present pursuant to an H-2B visa and who did not receive all of their wages when they were due.[6] Gaxiola and her counsel (who are also class counsel for

---

[6]Plaintiff has defined the Rule 23(b)(3) class as follows:

The NCWHA Class consists of all non-supervisory workers who were, are and/or shall be jointly or severally employed by Defendants at any time during the two chronological years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action, who performed and/or shall perform any work for Defendants pursuant to a labor certification and visa issued to Defendants and those workers under 8 U.S.C. § 1101(a)(15)(H)(ii)(b), and who did not receive all of their wages when they were due.

23

the FLSA claims) have submitted sworn declarations, in which Gaxiola acknowledges her responsibilities as class representative and her understanding of those responsibilities. (See Ex. 2-5 to Mem. Supp. Class Cert. Mot. [DE #42].)

To be certified as a class action under Rule 23, an action must meet four threshold requirements: (1) the class must be so numerous that joinder of all members is impractical ("numerosity requirement"); (2) there must be questions of law or fact common to the class ("commonality requirement"); (3) the representative parties' claims must be typical of the claims of the class ("typicality requirement"); and (4) the representative parties must be able to fairly and adequately protect the interests of the class ("adequacy-of-representation requirement"). Fed. R. Civ. P. 23(a).

The action must also satisfy one of the requirements set forth in Rule 23(b). See Fed. R. Civ. P. 23(b)(1), (2), (3). Gaxiola asserts that the proposed class claim alleging violation of the NCWHA is maintainable under Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the

Defendants did not employ H-2B workers after 2007; therefore for practical purposes the proposed class claims only cover the period of August 1, 2006, through the end of 2007.

24

controversy." Fed. R. Civ. P. 23(b)(3). In determining whether an action satisfies Rule 23(b)(3), the court should consider such matters as:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

### 1. Numerosity Requirement

The numerosity requirement of Rule 23(a)(1) mandates that the class be "so numerous that joinder of all members is impracticable." Id. No specific number of members is necessary for class certification, and the decision must be based upon the particular facts of each case. Rodger v. Electronic Data Systems Corp., 160 F.R.D. 532 (E.D.N.C. 1995). Counsel estimates that the proposed class should exceed 60 workers. Additionally, joinder of all members is all but impossible due to geographic disbursement, lack of sophistication, and the fact that the proposed class is comprised

of non-English speaking migrant workers. Plaintiff has met the numerosity requirement.

### 2. Commonality & Typicality Requirements

Plaintiff has shown that the proposed class members share several common questions of law and fact, as alleged in paragraph 40 of the complaint:

(1) Whether defendants failed to pay the named plaintiff and the class members all the wages they had agreed to pay when those wages were due for each hour or part of an hour that each such worker was employed by the defendants, when the defendants made loan repayment deductions from the wages of the NCWHA class members for the transportation, and visa expenses and fees required by the H-2B program;

(2) Whether the transportation, passport, visa, and border crossing expenses and fees which were deducted from the weekly pay of plaintiff and members of the proposed class were primarily for the benefit of the defendants;

(3) Whether the defendants failed to pay wages when due based upon the defendants' failure to obtain a written authorization from the named plaintiff and the other proposed class members in the form required by N.C. Gen. Stat. § 95-25.8; and

(4) Whether the authorization method, if any, used by the defendants complied with the requirements of N.C. Gen. Stat. § 95-25.8.

Defendants argue that Gaxiola cannot show commonality and typicality because she only worked for defendants for a period of four weeks and her piece-rate claims are not supported by the evidence. However, it is not necessary that a named plaintiff prove the merits of her claim prior to class certification.

26

This case presents some factual differences among the putative class members, including differences in the specific costs borne by the workers and the manner in which those costs were paid. Despite these differences, all of the claims are based on the same legal theory — that workers were not paid all of the promised wages when due. Thus, Gaxiola has established that the NCWHA claims are typical.

### 3. Adequacy-of-Representation Requirement

Rule 23(a)'s adequacy-of-representation requirement is also satisfied. Gaxiola is a member of the proposed class who, according to counsel, has actively participated in the preparation and conduct of this action and has maintained regular contact with counsel. (Mem. Supp. Mot. Class Cert. NCWHA Claims at 13.) She is represented by Carol Brooke and Clermont L. Fraser of the North Carolina Justice Center, a non-profit organization that provides legal representation to low income individuals in a variety of matters, including class action employment lawsuits. Ms. Brooke and Mr. Fraser both are or have been involved in a number of class action suits, and Ms. Brooke has previously served as class counsel before this court in litigation involving claims virtually identical to those asserted in the instant case. Both counsel have zealously represented the named plaintiff throughout this action. For these reasons, the

27

court finds that Ms. Brooke and Mr. Fraser, as well as their client, will fairly and adequately represent the interests of the proposed class.

### 4. Rule 23(b) Requirement

Defendants, citing cases from other jurisdictions, argue that the Rule 23 NCWHA class action claims are inconsistent with, pre-empted by, and repugnant to, the collective action under the FLSA. See, e.g., Otto v. Pocono Health Systems, 457 F. Supp. 2d 522 (M.D. Pa. 2006). The court has reviewed the caselaw and declines to adopt defendants' reasoning. Furthermore, defendants point to this court's decision in De Luna-Guerrero, in which this court declined to exercise supplemental jurisdiction over state law claims. De Luna-Guerrero is distinguishable from the instant matter. In De Luna Guerrero, there were exceptional circumstances, including three different proposed classes of varied types and sizes. Those exceptional circumstances are not present here.

The court finds that the NCWHA claims are appropriate for class certification under Rule 23(b). The legal and factual issues of the class predominate over any individual issues of law and fact. Additionally, because of the relatively small amount of the wage claims in this case, no individual class member could have any reasonable financial capability to pursue this litigation on an

28

individual basis. The court now turns its attention to the merits of plaintiffs' NCWHA claims.

**B.   Analysis of NCWHA Claims**

    1.   <u>Failure to Obtain Written Authorization for Deductions</u>

Under the NCWHA, an employer may withhold a portion of an employee's wages provided that the employer has

> written authorization from the employee which (i) is signed on or before the payday(s) for the pay period(s) from which the deduction is to be made; (ii) indicates the reason for the deduction; and (iii) states the actual dollar amount . . . of wages which shall be deducted from one or more paychecks.

N.C. Gen. Stat. § 95-25.8(a)(2). Defendants have admitted that they did not obtain authorization for the deductions made from their employees' pay. (Answer ¶¶ 37, 43.) Therefore, as a matter of law, they are liable for violating N.C. Gen. Stat. § 95-25.8.

    2.   <u>Failure to Pay the Promised Wage</u>

The NCWHA also requires employers to pay their employees at least the promised wage for each hour or part of an hour that they perform labor for their employers. N.C. Gen. Stat. § 95-25.6. In this case, defendants were required to pay each of their H-2B workers the prevailing wage, and they advertised the job openings with the prevailing wage, $6.17 in 2007 and $5.17 in 2006 and 2005, all higher than the federal minimum wage at that time. Defendants have admitted

to failing to pay some workers at least the prevailing wage. (Ex.
9, Defs.' Resp. to Pl.'s First Set of Requests for Admission, No.
4-6 [DE #39-13].) Additionally, since plaintiffs have shown that
defendants violated the FLSA's minimum wage provisions, and the
prevailing wage was higher than the FLSA minimum wage, defendants
violated N.C. Gen. Stat. § 95-25.6.

### 3.   Deductions for Visa, Transportation and Border Crossing Fees

Defendants have also violated the NCWHA by shifting the cost
of visa, transportation and border crossing expenses to Gaxiola and
other members of the NCWHA class to the extent those deductions
brought their pay below the promised wage. As previously stated,
the promised wage that defendants were required to pay plaintiff
class members under N.C. Gen. Stat. § 95-25.6 was the H-2B prevailing
wage, which at all times relevant to this case exceeded the minimum
wage required by federal law. Therefore, in every situation where
defendants failed to pay the minimum wage, they also failed to pay
the promised wage and therefore violated the NCWHA.

Defendants argue that the NCWHA is inapplicable to the claim
that defendants brought the plaintiff class members' pay below the
promised wage through deductions because "there is no case supporting
the application of any part of the 'de facto' deduction analysis to
the NCWHA." (See Defs.' Resp. at 14.) In interpreting the NCWHA,

30

North Carolina courts look to the FLSA for guidance. See Laborer's

Int'l Union of North America v. Case Farms, Inc., 127 N.C. App. 312,

314 (1997). In Frog Island Seafood, the court held:

> With respect to the definition of 'wages,' there is no
> material difference between the NCWHA and the FLSA. In
> particular, regulations implementing both Acts provide
> that an employee's wage includes the reasonable cost of
> furnishing board, lodging and other facilities, see 13
> N.C.A.C. § 12.0301(a); 29 C.F.R. § 531.3(1a), but
> excludes items which are primarily for the benefit of the
> employer. See 13 N.C.A.C. § 12.0301(d); 29 C.F.R. §
> 531.32(c). Accordingly, whether the issue of wages is
> analyzed under the FLSA or NCWHA, "there is no legal
> difference between deducting a cost directly from the
> workers' wages and shifting a cost, which they could not
> deduct, for the employee to bear." De Luna-Guerrero, 338
> F. Supp. 2d at 656. Under North Carolina law, therefore,
> this court must follow the administrative and judicial
> interpretations of the FLSA when considering whether
> Plaintiff's promised wages have been paid when due under
> the NCWHA.

Garcia v. Frog Island Seafood, No. 2:06-CV-46-F, Class Cert. Order

at 7-8 [DE #55]. Where, as here, the court has found a violation

of the FLSA for improper deductions, be it actual or de facto,

defendants are also liable for violation of the NCWHA for failing

to pay the promised wage.

### 4. Good Faith Defense

As to the good faith defense argument made by defendants

regarding the NCWHA violations, the court finds that defendants

cannot meet the heavy burden required. Defendants admit they did

31

not always pay the promised wage and do not rely on any administrative regulation or ruling in asserting this defense.

Therefore, the court GRANTS plaintiffs' motion for summary judgment as to defendants' liability for violation of the NCWHA.

## CONCLUSION

For the foregoing reasons,

1.   Gaxiola's motion for class certification of the NCWHA claims [DE #41] is GRANTED and these claims are certified as a class action under Rule 23 of the Federal Rules of Civil Procedure;

2.   Defendants' motion for partial summary judgment [DE #40] is GRANTED as to plaintiffs' FLSA claims for deduction of transportation and visa expenses that arose prior to August 1, 2006 (because of no finding of willfulness), and is DENIED in all other respects;

3.   Plaintiffs' motion for partial summary judgment [DE #38] is DENIED as to defendants' liability on plaintiffs' FLSA claims for deduction of transportation and visa expenses that arose prior to August 1, 2006, and GRANTED as to defendants' liability on all other claims.

4.   The court DIRECTS the parties to confer and to submit jointly, within twenty-one (21) days of the date of this order, a proposed class notice (including appropriate forms) for the NCWHA

claims. The parties shall submit English and Spanish versions of the class notice and appropriate forms, with the Spanish translation prepared by an individual certified as a Spanish-English Federal Court Interpreter by the Administrative Office of the United States Courts.

5. In light of the court's class certification of the NCWHA claims, the trial on the issue of plaintiffs' damages under the FLSA and the NCWHA, which is currently scheduled for April 18, 2011, is continued to the court's August 15, 2011, civil term.

This _1st_ day of March 2011.

_____
MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC
#26

33